**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| **BETESFA, INC.,** a District of Columbia Corp**. d/b/a ABG MART**, and **BETELHEM KEBEDE GESESSE,** an Individual,<br><br>          Plaintiffs,<br><br>    v.<br><br>**UNITED STATES OF AMERICA**,<br><br>          Defendant. | **CIVIL ACTION NO.** _____<br><br>**COMPLAINT** |

The Plaintiffs, BETESFA, INC., a District of Columbia Corporation, D/B/A ABG MART, and BETELHEM KEBEDE GESESSE, an Individual, by and through their undersigned counsel and hereby sue the UNITED STATES OF AMERICA upon the grounds set forth herein, and in support thereof, states as follows:

FACTUAL BACKGROUND

1.     The Plaintiffs own and operate a small retail store in Washington, DC named ABG Mart (hereinafter "ABG").  The store, which has been a neighborhood staple, functions as a small grocery store for local residents.

2.     Located in the District of Columbia, ABG serves a community where there are approximately 43,203 households that receive SNAP benefits.  Of those participant households, approximately 48.6% have children under eighteen years of age (compared to only 18.0% of those households who do not receive SNAP benefits).  The vast majority of this population are participants in the Supplemental Nutrition Assistance Program[1] (also referred to as SNAP),

_____

[1] See USDA Publication of January 2017, Profile of SNAP Households: District of Columbia.

formerly known as Food Stamps, which is overseen by the Food & Nutrition Service ("FNS") of the United States Department of Agriculture ("USDA").

3.      Accordingly, ABG accepts EBT payments and participates in the SNAP program in order to better serve its customer base.

4.      Since the store began accepting food stamps/EBT, ABG has never once received a warning letter, disciplinary action, or any other correspondence from the United States Department of Agriculture which would indicate that the store was somehow improperly accepting benefits or otherwise operating the program incorrectly.

5.      Nevertheless, on July 17, 2017, the USDA, through the FNS, sent the Plaintiffs a Charging Letter pursuant to 7 C.F.R. §278.6, alleging a series of violations on the part of the Plaintiffs in their acceptance of SNAP benefits from participants.  The transactions listed by the Defendant in the Charging Letter occurred between January 2017 and May 2017.

6.      The Plaintiffs vehemently denied and defended against the Charging Letter, but on September 6, 2017, were permanently disqualified from SNAP.

7.      As a result, the store lost a considerable portion of its gross revenue (including revenue derived from SNAP) and a substantial portion of the store's clientele.

8.      Accordingly, the Plaintiffs timely filed a Request for Administrative Review as permitted by 7 C.F.R. §279, and presented arguments and evidence in support of their position.  The Plaintiffs took issue not only with the disqualification process and the inaccuracy of the evidence against them, but also with the comparative lack of direct evidence that any violations of SNAP retailer policies had occurred.

9.      The Administrative Review Branch of the FNS responded to the Plaintiffs' appeal in a letter and opinion entitled Final Agency Decision, dated January 18, 2018, which was received

January 22, 2018, and attached hereto as **Exhibit "A"**.  The Plaintiffs' administrative appeal was denied.

10.     This Judicial Appeal has been filed, timely, to seek the reversal of the USDA's current decision to permanently disqualify the Plaintiffs from participating as a SNAP retailer.

## JURISDICTION AND VENUE

11.     The Plaintiffs bring this action based upon their disqualification from eligibility to participate in the Supplemental Nutrition Assistance Program, as codified by Congress in 7 U.S.C. §§ 2011 – 2036(c).

12.     This Court has subject matter jurisdiction over the matters raised by the Plaintiffs in this case pursuant to 7 U.S.C. §2023, and 7 C.F.R. §279.7.  Furthermore, 28 U.S.C. §1331 gives this Court original jurisdiction over civil actions arising under the laws of the United States, for which the aforementioned statute and regulation qualify.

13.     Venue is appropriate in this District pursuant to 7 C.F.R.§279.7(a), 7 U.S.C. §2023(13) and 28 U.S.C. §1391(b) as this Plaintiffs' business was owned and operated in the District of Columbia, and because the facts giving rise the circumstances herein occurred in the District of Columbia.

## PARTIES

14.     The Plaintiff, Betesfa, Inc., a District of Columbia  Corporation, d/b/a Abg Mart, operates at 2216 Martin Luther King Jr. Ave. SE, Washington, DC 20020-5734.  Betesfa, Inc., d/b/a Abg Mart is referred to herein with the other Plaintiff collectively as "ABG."

15.     The Plaintiff, Betelhem Kebede Gesesse, is a natural person and a resident of Washington, DC.  Ms. Gesesse is referred to collectively with the other Plaintiff as "ABG" herein.

16.     The Defendant, the UNITED STATES OF AMERICA, acting through its agency, the United States Department of Agriculture (hereinafter referred to as the "USDA" or "Department"), and its subservice, the Food and Nutrition Service.  The Defendant may be referred to herein as "the Government" or "the Department".

## GENERAL ALLEGATIONS

17.     The Supplemental Nutrition Assistance Program (SNAP) is a government program operated pursuant to Title 7 United States Code, Chapter 51, and codified more specifically as 7 U.S.C. §§2011-2036(c).

18.     The general purpose of SNAP is to provide food benefits (formerly "food stamps") to program participants who meet certain financial need requirements.  SNAP participants are awarded benefits (money) issued on a state-by-state basis in varying amounts based upon the needs of their household.  These benefits are transmitted to, and utilized by the participant, through an Electronic Benefits Transfer (EBT) card, which conceptually functions similar to a debit card.

19.     The benefits are to be used by the participant only for the purchase of food and other eligible items sold by an approved SNAP retailer, such as ABG.

20.     In turn, SNAP retailers are governed by the Defendant through 7 C.F.R. §278.6 which, in pertinent part, permits the disqualification or suspension of retailers who violate SNAP regulations.

21.     Significantly, SNAP violations on the part of retailers typically occur in two areas: (1) the sale of ineligible items to SNAP participants (using their EBT benefits), and (2) trafficking in SNAP benefits.

22.     The term "trafficking" is defined at length by 7 C.F.R. §271.2, which states in pertinent

part that trafficking is:

> "(1) The buying, selling, stealing, or otherwise effecting an exchange of
> SNAP benefits issued and accessed via Electronic Benefit Transfer (EBT)
> cards, card numbers and personal identification numbers (PINs), or by
> manual voucher and signature, for cash or consideration other than eligible
> food, either directly, indirectly, in complicity or collusion with others, or
> acting alone;
>
> (2) The exchange of firearms, ammunition, explosives, or controlled
> substances, as defined in section 802 of title 21, United States Code, for
> SNAP benefits;
>
> (3) Purchasing a product with SNAP benefits that has a container
> requiring a return deposit with the intent of obtaining cash by discarding
> the product and returning the container for the deposit amount,
> intentionally discarding the product, and intentionally returning the
> container for the deposit amount;
>
> (4) Purchasing a product with SNAP benefits with the intent of obtaining
> cash or consideration other than eligible food by reselling the product, and
> subsequently intentionally reselling the product purchased with SNAP
> benefits in exchange for cash or consideration other than eligible food; or
>
> (5) Intentionally purchasing products originally purchased with SNAP
> benefits in exchange for cash or consideration other than eligible food;
>
> (6) Attempting to buy, sell, steal, or otherwise affect an exchange of
> SNAP benefits issued and accessed via Electronic Benefit Transfer (EBT)
> cards, card numbers and personal identification numbers (PINs), or by
> manual voucher and signatures, for cash or consideration other than
> eligible food, either directly, indirectly, in complicity or collusion with
> others, or acting alone." 7 C.F.R. §271.2 (2016)

23.     While most of 7 C.F.R. §278.6 sets forth a graduated scale for punishment of SNAP

retailers for the sale of ineligible items, trafficking is treated more harshly.  Specifically, if a

retailer is found to be trafficking in SNAP benefits, it (more specifically, the individual(s) who

has applied for SNAP participation) is permanently disqualified from participation in the

program, and may be issued a Transfer of Ownership Civil Money Penalty (CMP) of $11,000.00

per violation.  FNS also adds the  retailer and its owner(s) and officer(s) to the federal database list of disqualified persons without notice or opportunity to appeal or be heard.

24.     In this matter the government maintains that there were two violations.

25.     The CMP itself is not immediately assessed against the retailer, but instead is held in abeyance until the retail store is sold (regardless of the period of time intervening between the permanent disqualification and the sale), and then assessed against the individual(s) who were the applicants on behalf of the store.

26.     Such are the circumstances of this case.  The Plaintiffs have been permanently disqualified by the Defendant, resulting in damage to the Plaintiffs and a potential future fine.

### ERRORS & OMISSIONS ON THE PART OF THE DEFENDANT

27.     The Plaintiffs did not engage in trafficking in SNAP benefits.

28.     The Defendant lacks any direct evidence (eye-witness accounts, receipts, or the like) that trafficking occurred.

29.     Instead, the Defendant based its disqualification upon data analysis, which is circumstantial by definition: evidence from which more than one logical conclusion can be reached.[2]

30.     Each of the 186 transactions set forth in the Charging Letter were categorized and selected by the Defendant's ALERT System computer program, which identifies specific transaction types, including two of which are addressed herein:

a.      Multiple transactions occurring from individual benefit accounts in "unusually" short periods of time;

b.      "Excessively Large" transactions made from SNAP beneficiary accounts.

---

[2] This reference is drawn from *Chief Counsel Advisory*, IRS CCA 200912021, though it is perhaps the best succinct definition of the term.

31.     The Department does not have any statistical studies, data analysis, or supporting evidence to show that either of the two of those categories to the SNAP violation of "trafficking."   In fact, the Defendants' Rule 30(b)(6) witness, Mr. Douglas Wilson, has previously testified on multiple occasions that those transaction categories are merely suspicious, and not in-and-of-themselves, indicative of trafficking.[3]

32.     Furthermore, Mr. Wilson, as the Government's Rule 30(b)(6) witness with the most knowledge of the ALERT system, indicated that the categories and transactions cannot distinguish between different SNAP violation types (such as trafficking, issuance of credit, and sale of ineligible items).

33.     There is no statistically meaningful correlation between the two transaction categories and the act of "trafficking."

34.     Despite this, cases using the ALERT system's categories are referred to FNS' Investigative Analysis Branch (IAB) for investigation and prosecution.

35.     This instant matter was just such a case, referred to IAB Section Chief Fredrick Conn's division for evaluation and prosecution.   Mr. Conn was the Section Chief that issued the permanent disqualification in this case.

36.     This process is not an impartial one, nor is it unbiased.   As a rule, every single case referred to the IAB for data analysis is charged with trafficking in SNAP benefits.

37.     Of the thousands of cases handled every year, the IAB makes a finding of trafficking in nearly all (between 95% and 100% depending upon the section) of the cases.   There is no impartiality in this process.   It is an assembly line.

---

[3] Mr. Wilson's Deposition transcripts will be separately produced to the Defendant, and presented as necessary to this Court.   However, attachment to this Complaint would be unnecessary and redundant.

38.     The Defendant, in this case did little in way of investigation to support its position that trafficking was more likely than not the cause of trafficking.  Keeping in mind that as of this filing, the Plaintiffs **have never seen the Administrative Record** (this is not an exhaustive list of the failures on the party of the Defendant's data analysis):

a.      The Defendant did not interview the households engaged in the transactions, despite having the ability to do so;

b.      The Defendant continued to rely upon data comparison with other stores that were not issuing credits, meaning that the final data analysis conducted by the Department was proverbially comparing apples to oranges, and accordingly, inaccurate; and

c.      The Defendant did not conduct any research on household shopping and spending habits, specifically with the effect on participants' store loyalty, item selection, purchase transaction frequency and transaction sizes.

39.     At the initial stages of the Administrative Decision, it is the Government's burden to prove by a preponderance of the evidence that it is more likely than not that trafficking had occurred.[4]

40.     The Government did not (and does not) have sufficient evidence to meet that burden, or to link the transactions to trafficking.

### PLAINTIFFS' ALLEGATIONS

41.     The Plaintiffs do not have access to the Administrative Record.  At no point in this process have the Plaintiffs been given access to any records (aside from the Charge Letter,

---

[4] On Judicial Appeal, the burden rests with the Plaintiffs.

Permanent Disqualification Letter, and Final Agency Decision) relied upon by the Department in its analysis.[5]

42.     Furthermore, there have been no decisions made by Administrative Law Judges, Department Attorneys or other legal-trained individuals who could adequately weigh the evidence before the Department during the administrative process to date.

43.     What little Due Process actually exists in this process is borne out only here, at the Judicial Review stage of the case.

44.     The Plaintiff's transactions were *bona fide* purchases of food items, in exchange for SNAP benefits as the system was intended, albeit not necessarily with the timing or amounts preferred by the Department.

45.     However, the shopping habits of SNAP participants in the store are consistent with the transactions listed, and the Plaintiffs anticipate such testimony from these households.

46.     The Plaintiffs' explanations for the transactions, as set forth in their Administrative Brief, are consistent with the actual shopping habits and trends that occur in the store.

47.     In any case, the Store was not at any point in time, engaged in trafficking SNAP benefits.

## COUNT I: REQUEST FOR JUDICIAL REVIEW

48.     The Plaintiffs incorporate and restate each and every paragraph set forth above as though fully set forth herein.

49.     The Plaintiffs, pursuant to 7 U.S.C. §2023 and 7 C.F.R. §279.7 have the right to, and hereby do request a *de novo* judicial review of the permanent disqualification issued by the Defendant.

---

[5] FOIA requests can be and have been made, but they produce documents that are almost entirely redacted.

50.     The Plaintiffs maintain that they did not traffic in SNAP benefits and ask that the Court conduct a trial on the merits of the matter, permitting the parties to present testimony and submit evidence in support of their positions.

51.     The Defendant's decision was both invalid and inaccurate for those reasons set forth above, as well as such further reasons as may be uncovered during the discovery phase of this matter.

52.     Accordingly, the permanent disqualification of the Plaintiffs should be reversed, and the Plaintiffs should be removed from the disqualified persons/store lists maintained within the Department.

53.     Furthermore, to the extent that the Plaintiffs incur attorneys' fees and court costs in conjunction with this Judicial Appeal, the Defendant should be made to pay such fees and costs.

WHEREFORE, the Plaintiffs, BETESFA, INC., a District of Columbia Corporation, D/B/A ABG MART, and BETELHEM KEBEDE GESESSE, an Individual, respectfully ask this Court to conduct a *de novo* review of this matter, conduct a trial upon the merits of the Plaintiffs' case, and enter Judgment reversing the permanent disqualification, as well as awarding the Plaintiffs any attorney's fees and court costs they may incur in this matter.

Dated: February 21, 2018                    Respectfully submitted,

/s/ Stewart D. Fried
Stewart D. Fried, Esq.
D.C. Bar No.: 457801
Olsson Frank Weeda Terman Matz PC
600 New Hampshire Avenue, N.W.,  Suite 500
Washington, DC 20037
Telephone:  202-518-6326
Fax:  202-234-3550
Email:  sfried@ofwlaw.com

-and-

Andrew Z. Tapp, Esquire
Florida Bar Number:  68002
Metropolitan Law Group, PLLC
1971 W. Lumsden Road, #326
Brandon, Florida 33511-8820
Telephone:     (813) 228-0658
Fax:              (813) 330-3129
Email:  Andrew@Metropolitan.legal
Application for *Pro Hac Vice* pending

**ATTORNEYS FOR PLAINTIFFS**