EXHIBIT "F"

U.S. Department of Agriculture
Food and Nutrition Service
Administrative Review Branch
Alexandria, VA 22302

| | |
|---|---|
| Gloesis Group, ) | |
| ) | |
| Appellant, ) | |
| ) | |
| v. ) | Case Number: C0189046 |
| ) | |
| Retailer Operations Division, ) | |
| ) | |
| Respondent. ) | |

## FINAL AGENCY DECISION

It is the decision of the USDA that there is not sufficient evidence to support the Retailer Operations Division's determination to permanently disqualify Gloesis Group from participating as an authorized retailer in the Supplemental Nutrition Assistance Program. Therefore, the permanent disqualification decision is reversed. The Retailer Operations Division is to take immediate action to reinstate Gloesis Group as a SNAP authorized retail food store.

## ISSUE

The issue accepted for review is whether the Retailer Operations Division took appropriate action, consistent with 7 CFR § 278.6(a), (c) and (e)(1) in its administration of the SNAP, when it assessed a permanent disqualification against Appellant.

## AUTHORITY

7 USC § 2023 and the implementing regulations at 7 CFR § 279.1 provide that "A food retailer or wholesale food concern aggrieved by administrative action under § 278.1, § 278.6 or § 278.7 . . . may file a written request for review of the administrative action with FNS."

## CASE CHRONOLOGY

In a letter dated May 3, 2016, the Retailer Operations Division charged Appellant with trafficking, as defined in Section 271.2 of the SNAP regulations, based on a series of irregular SNAP transaction patterns that occurred during the months of September 2015 through February 2016. The letter noted that the penalty for trafficking is permanent disqualification as provided by 7 CFR § 278.6(e)(1). The letter also noted that Appellant could request a trafficking civil money penalty (CMP) in lieu of a permanent disqualification within ten days of receipt under the conditions specified in 7 CFR § 278.6(i).

1

Appellant replied to the charges by telephone on May 5, 2016, and by letters dated May 13 and August 2, 2016. Appellant denied trafficking and stated that the transaction patterns were normal based on the unique circumstances and characteristics of the store. Appellant did not request a CMP.

After considering Appellant's reply and the evidence presented in the case, the Retailer Operations Division issued a determination letter dated August 9, 2016. The determination letter informed Appellant that it was permanently disqualified from the SNAP in accordance with 7 CFR § 278.6(c) and § 278.6(e)(1). The determination letter also stated that Appellant was not eligible for a trafficking CMP because Appellant failed to submit sufficient evidence to demonstrate that the firm had established and implemented an effective compliance policy and program to prevent violations of the SNAP.

In a letter postmarked August 17, 2016, ownership appealed the Retailer Operations Division's determination and requested an administrative review. The appeal was granted.

## STANDARD OF REVIEW

In appeals of adverse actions, the Appellant bears the burden of proving by a clear preponderance of the evidence, that the administrative actions should be reversed. That means the Appellant has the burden of providing relevant evidence which a reasonable mind, considering the record as a whole, would accept as sufficient to support a conclusion that the matter asserted is more likely to be true than not true.

## CONTROLLING LAW

The controlling statute in this matter is contained in the Food and Nutrition Act of 2008, as amended, 7 USC § 2021 and § 278 of Title 7 of the Code of Federal Regulations (CFR). Part 278.6(a), (c) and (e)(1) establish the authority upon which a permanent disqualification may be imposed against a retail food store or wholesale food concern in the event that personnel of the firm have engaged in trafficking SNAP benefits.

7 CFR § 271.2 states, in part, that, "Eligible foods means: Any food or food product intended for human consumption except alcoholic beverages, tobacco and hot food and hot food products prepared for immediate consumption."

7 CFR § 271.2 defines trafficking as: "(1) The buying, selling, stealing, or otherwise effecting an exchange of SNAP benefits issued and accessed via Electronic Benefit Transfer (EBT) cards, card numbers and personal identification numbers (PINs), or by manual voucher and signature, for cash or consideration other than eligible food, either directly, indirectly, in complicity or collusion with others, or acting alone; . . ."

7 CFR § 278.6(a) states, inter alia, that "FNS may disqualify any authorized retail food store . . . if the firm fails to comply with the Food and Nutrition Act of 2008, as amended, or this part. Such disqualification shall result from a finding of a violation on the basis of evidence that may include facts established through on-site investigations, inconsistent redemption data, evidence

obtained through a transaction report under an *electronic benefit transfer system, . . .*" (emphasis added)

7 CFR § 278.6(b)(2)(ii) states, inter alia: "Firms that request consideration of a civil money penalty in lieu of a permanent disqualification for trafficking shall have the opportunity to submit to FNS information and evidence . . . that establishes the firm's eligibility for a civil money penalty in lieu of a permanent disqualification in accordance with the criteria included in § 278.6(i). This information and evidence shall be submitted within 10 days, as specified in § 278.6(b)(1)."

7 CFR § 278.6(e)(1) reads, in part, "FNS shall disqualify a firm permanently if personnel of the firm have trafficked as defined in § 271.2."

7 CFR § 278.6(i) states, inter alia: "FNS may impose a civil money penalty in lieu of a permanent disqualification for trafficking . . . if the firm timely submits to FNS substantial evidence which demonstrates that the firm had established and implemented an effective compliance policy and program to prevent violations of the Program."

## SUMMARY OF THE CHARGES

The Appellant firm was charged and determined to be trafficking based on an analysis of EBT transaction data from September 2015 through February 2016. This involved the following SNAP transaction patterns which are indicative of trafficking:

- Multiple transactions were made from individual benefit accounts in unusually short time frames.
- An excessive number of manual key entered EBT transactions were made from your location.
- There were excessively large purchase transactions made from recipient accounts.

The issue in this review is whether, through a preponderance of evidence, it is more likely true than not true that the questionable transactions were the result of trafficking.

## APPELLANT'S CONTENTIONS

In the administrative review request postmarked August 17, 2016, Appellant provided the following summarized contentions, in relevant part:

- Appellant is a family owned store operated by the owner, his wife, and three daughters.
- Appellant did not manipulate the system.
- The manual transactions were conducted when the machine was not working.
- Appellant leads a church in the same building as the store.
- Having a family size of six to nine people, customers are able to buy $200 to $300 groceries on the same day because they will not have another opportunity to come back and buy.
- Most of them are helped by Catholic Charity transportation.

- Appellant would never do anything to beat the system or neglect the laws.
- Appellant has never got in trouble since it was first authorized in 2009.

In Appellant's reply to the Retailer Operations Division, Appellant provided the following explanations for the transactions:

- Owner is a pastor working with the Texas Baptist Convention assisting refugees.
- The store sells African foods from Washington, DC and Houston.
- African food is expensive with some fish selling for $16.00-$34.00 per pound, so the purchase of two to three pounds of fish can add up to over $100.00.
- Most of his clients are refugees coming from Africa and do not speak English.
- They make a purchase, and in a matter of a few minutes, they come back saying they have forgotten something and make a purchase using the same card, their only means to buy foods for them.
- They buy something at Appellant, go check next door in another store and figure out that Appellant is a little cheaper, so they come back to buy more.
- Some customers who live some distance away forget their card so they manually enter the card information.
- The POS had not been working and was changed out last week. .
- The people coming to buy food are buying some expensive food according to the household size.
- The opportunity they have to come get food is very limited and they buy once and come back next month or two months later.

Appellant provided the following documents in support of its explanations to the Retailer Operations Division:

- 27 copies of invoices; and.
- A copy of the Texas Sales and Use Tax Return for calendar year 2015.

The preceding may represent only a brief summary of the Appellant's contentions presented in this matter. However, in reaching a decision, full attention and consideration has been given to all contentions presented, including any not specifically recapitulated or specifically referenced.

## ANALYSIS AND FINDINGS

### Store Visit

FNS authorized Gloesis Group as a combination grocery on June 28, 2012. The firm was authorized at another location previously on June 16, 2009. The case file indicates that in reaching a disqualification determination, the Retailer Operations Division considered information obtained during a March 19, 2016, store visit conducted by a FNS contractor to observe the nature and scope of the firm's operation, stock, and facilities. This information was then used to ascertain if there were justifiable explanations for the firm's irregular SNAP transactions.

The store visit report and photographs documented the following store size, description, and characteristics:

- Gloesis Group is approximately 1000 square feet, with no additional food storage outside of public view.
- There were some shopping baskets but no shopping carts for customer use.
- There was one cash register and one point-of-sale device.
- The store specializes in African ethnic food.
- There was no optical scanner for the speedy processing of transactions.
- There were five freezers: one with chicken; two with fish; and two freezers stocked with fruit and vegetables.
- There was dried fish and other dried ethnic goods.
- There were bulk bags of rice and grain.
- There were no dairy items.
- The remaining stock consisted of accessory foods such spices, and carbonated and uncarbonated drinks.
- Ineligible items included wigs, beauty products, and dvds.

There are a number of factors that combined, substantially weaken the conclusion that Appellant was more likely trafficking than not.

### Charge Letter Attachments

**Charge Letter Attachment 1. Multiple transactions were made from individual benefit accounts in unusually short time frames.** 7 USC 2018 (b)(7)(e).

Eligible food items are clearly seen in the FNS contractor photos and noted on the store visit report. The owner provided additional store photographs and purchase invoices of eligible foods that confirmed Appellant carries ample eligible foods. Thus, the evidence supports that Appellant sold high-priced ethnic items that could legitimately result in the transaction amounts listed on this Attachment.

**Charge Letter Attachment 2: An excessive number of manual key entered EBT transactions were made from the store location.** 7 USC 2018 (b)(7)(e):

7 USC 2018 (b)(7)(e)

There is not much of a pattern established here. 7 USC 2018 (b)(7)(e).

Appellant states that there was a problem with its POS device and it needed to have the machine replaced. The record shows that the POS device was replaced in April and there were no manual transactions conducted at Appellant since the machine was replaced. The Retailer Operations Division was not sure if the manual transactions stopped due to the device being replaced or if the firm stopped conducting manual transactions after it was informed that it cannot conduct transactions without the card present. Regardless, the evidence supports Appellant's contention.

5

Thus, Appellant's explanation appears to be credible and therefore there is not a preponderance of evidence that these manual transactions were the result of trafficking SNAP benefits.

**Charge Letter Attachment 3: Excessively large purchase transactions were made from recipient accounts.** 7 USC 2018 (b)(7)(e).

Appellant was authorized as a combination grocery and therefore was compared to the average combination grocery/other store in Texas during the review period. The average combination grocery/other store SNAP transaction during the review period was $11.34. However, Appellant is a firm that specializes in high priced African ethnic items with few low-dollar items and really no convenience foods available. The purchase of one or two items at Appellant would likely exceed the average SNAP transaction for combination stores. Thus, the average combination grocery's SNAP transaction amount is much lower than Appellant because most typically sell a variety of low-dollar value foods. 7 USC 2018 (b)(7)(e).

7 USC 2018 (b)(7)(e)

In summary, the explanations as provided by ownership regarding the record of transaction data at Appellant are plausible and supported by documentation submitted for review. Moreover, a finding of trafficking that is based not on investigative evidence, but rather on SNAP EBT data analysis alone, must be grounded on the disclosure of transaction characteristics for which there is no better explanation other than trafficking. While it is impossible to conclude that trafficking positively did not occur, the preponderance of evidence does not support the conclusion that trafficking is the most probable explanation for the questionable transactions.

This review finds that Appellant has met the burden of providing a preponderance of relevant evidence which a reasonable mind, considering the record as a whole, might accept as sufficient to support a conclusion that the SNAP transactions were legitimate. The determination of trafficking to explain the charged transactions is therefore not more likely to be true than not true.

## CONCLUSION

The Retailer Operations Division's analysis of Appellant's SNAP EBT transaction record was the primary basis for its determination to permanently disqualify Appellant. This data provided evidence that the questionable transactions during the review period had characteristics that are consistent with trafficking violations in SNAP benefits. However, upon review of all of the evidence and documentation provided in this case, and based on the discussion herein, the determination to impose a permanent disqualification against Appellant is not supported by a preponderance of evidence and is reversed.

## RIGHTS AND REMEDIES

Applicable rights to a judicial review of this decision are set forth in 7 USC § 2023 and 7 CFR § 279.7. If a judicial review is desired, the Complaint, naming the United States as the defendant, must be filed in the U.S. District Court for the district in which the Appellant's owner resides or is engaged in business, or in any court of record of the State having competent

jurisdiction. If any Complaint is filed, it must be filed within thirty (30) days of receipt of this Decision.

Under the Freedom of Information Act (FOIA), it may be necessary to release this document and related correspondence and records upon request. If such a request is received, FNS will seek to protect, to the extent provided by law, personal information that if released, could constitute an unwarranted invasion of privacy.

_____  December 14, 2016
MARY KATE KARAGIORGOS           DATE
ADMINISTRATIVE REVIEW OFFICER