EXHIBIT "G"

U.S. Department of Agriculture
Food and Nutrition Service
Administrative Review Branch

Howard's Quik Mart,

Appellant,

v.

Retailer Operations Division,

Respondent.

Case Number: C0192424

## FINAL AGENCY DECISION

It is the decision of the U.S. Department of Agriculture (USDA), Food and Nutrition Service (FNS) that there is not sufficient evidence to support the Retailer Operations Division's determination to permanently disqualify Howard's Quik Mart from participating as an authorized retailer in the Supplemental Nutrition Assistance Program (SNAP). Therefore, the permanent disqualification decision is reversed.

## ISSUE

The issue accepted for review is whether or not the Retailer Operations Division took appropriate action, consistent with Title 7 Code of Federal Regulations (CFR) Part 278 in its administration of SNAP, when it imposed a permanent disqualification against Howard's Quik Mart.

## AUTHORITY

7 U.S.C. § 2023 and its implementing regulations at 7 CFR § 279.1 provide that "[A] food retailer or wholesale food concern aggrieved by administrative action under § 278.1, § 278.6 or § 278.7 ... may file a written request for review of the administrative action with FNS."

## SUMMARY OF CHARGES

The Appellant was charged with trafficking and subsequently permanently disqualified based on an analysis of EBT transaction data from February 2013 through July 2013. This involved the following transaction patterns which are common trafficking indicators:

- There were multiple transactions made from individual household benefit accounts within unusually short timeframes.
- Excessively large purchase transactions were made from recipient accounts.

1

## CASE CHRONOLOGY

The agency's record shows that FNS initially authorized Howard's Quik Mart for SNAP participation as a convenience store on July 3, 2008. In a letter dated August 18, 2016, the Retailer Operations Division charged the Appellant with trafficking, as defined in Section 271.2 of the SNAP regulations, based on a series of irregular SNAP transaction patterns that occurred between the months of February 2013 and July 2013. The letter noted that the penalty for trafficking is permanent disqualification as provided by 7 CFR § 278.6(e)(1). The letter also stated that the Appellant could request a civil money penalty (CMP) in lieu of permanent disqualification for trafficking, but noted that such a request must be made within 10 days of receipt of the charge letter under the conditions specified in 7 CFR § 278.6(i).

In correspondence between August 29, 2016 and September 9, 2016 the Appellant, without counsel, responded to the charge letter, generally stating that the firm was not engaged in trafficking and that the unusual transactions were primarily the result of SNAP customers purchasing large amounts of cola. The Appellant argued that this was a common occurrence in Kentucky in 2013 and that other firms in the area were experiencing similar high demand for cola products. The Appellant further stated that it had already called and explained this issue to FNS in 2014 after receiving a letter from the agency warning the firm that violations were suspected.

It is noted that in its response to the charge letter the Appellant also explained that the store was already closed, in part so that the owner could devote his efforts to his wife, who was suffering from a serious illness.

After considering the Appellant's reply and further reviewing the evidence in the case, the Retailer Operations Division determined that the Appellant's explanations and documentation were not sufficient to justify the unusual transaction patterns listed in the charge letter. As a result, the Retailer Operations Division concluded that trafficking had occurred as charged and issued a determination letter dated September 6, 2016. This determination letter informed the Appellant that it would be permanently disqualified from SNAP upon receipt of the letter in accordance with 7 CFR § 278.6(c) and § 278.6(e)(1). The letter also stated that the Retailer Operations Division considered the Appellant's eligibility for a trafficking CMP according to the terms of Section 278.6(i) of the SNAP regulations, but that a CMP was not appropriate in this case because the Appellant failed to submit sufficient evidence to demonstrate that the firm had established and implemented an effective compliance policy and program to prevent SNAP violations.

In a letter postmarked September 16, 2016, the Appellant appealed the Retailer Operations Division's determination by requesting an administrative review. The request was granted.

## STANDARD OF REVIEW

In an appeal of adverse action, such as disqualification from SNAP participation, an appellant bears the burden of proving by a preponderance of the evidence that the administrative action should be reversed. This means that an appellant has the burden of providing relevant evidence

which a reasonable mind, considering the record as a whole, would accept as sufficient to support a conclusion that the matter asserted is more likely to be true than not true.

## CONTROLLING LAW AND REGULATIONS

The controlling law in this matter is found in the Food and Nutrition Act of 2008, as amended (7 U.S.C. § 2021), and promulgated through regulation under Title 7 CFR Part 278. In particular, 7 CFR § 278.6(a) and (e)(1)(i) establish the authority upon which a permanent disqualification may be imposed against a retail food store or wholesale food concern.

7 U.S.C. § 2021(b)(3)(B) states, *inter alia*:

> … a disqualification under subsection (a) shall be … permanent upon … the first occasion or any subsequent occasion of a disqualification based on the purchase of coupons or trafficking in coupons or authorization cards by a retail food store or wholesale food concern or a finding of the unauthorized redemption, use, transfer, acquisition, alteration, or possession of EBT cards …

7 CFR § 278.6(c) states, *inter alia*:

> The letter of charges, the response, and any other information available to FNS shall be reviewed and considered by the appropriate FNS regional office, which shall then issue the determination. In the case of a firm subject to permanent disqualification under paragraph (e)(1) of this section, the determination shall inform such a firm that action to permanently disqualify the firm shall be effective immediately upon the date of receipt of the notice of determination from FNS, regardless of whether a request for review is filed in accordance with part 279 of this chapter.

7 CFR § 278.6(a) states, *inter alia*:

> FNS may disqualify any authorized retail food store … if the firm fails to comply with the Food and Nutrition Act of 2008, as amended, or this part. Such disqualification shall result from a finding of a violation on the basis of evidence that may include facts established through on-site investigations, **inconsistent redemption data, [or] evidence obtained through a transaction report under an electronic benefit transfer** system.… [Emphasis added.]

7 CFR § 278.6(e)(1)(i) states:

> FNS shall disqualify a firm permanently if personnel of the firm have trafficked as defined in § 271.2.

7 CFR § 271.2 states, *inter alia*:

> Trafficking means: The buying, selling, stealing, or otherwise effecting an exchange of SNAP benefits issued and accessed via Electronic Benefit Transfer (EBT) cards, card

3

numbers and personal identification numbers (PINs), or by manual voucher and signature, for cash or consideration other than eligible food, either directly, indirectly, in complicity or collusion with others, or acting alone...

7 CFR § 271.2 states, *inter alia*:

Eligible foods means: Any food or food product intended for human consumption except alcoholic beverages, tobacco and hot food and hot food products prepared for immediate consumption...

7 CFR § 278.6(b)(1) states, *inter alia*:

Any firm considered for disqualification... under paragraph (a) of this section... shall have full opportunity to submit to FNS information, explanation, or evidence concerning any instances of noncompliance before FNS makes a final administrative determination. The FNS regional office shall send the firm a letter of charges before making such determination. The letter shall specify the violations or actions which FNS believes constitute a basis for disqualification... The letter shall inform the firm that it may respond either orally or in writing to the charges contained in the letter within 10 days of receiving the letter...

7 CFR § 278.6(b)(2)(ii) states, *inter alia*:

Firms that request consideration of a civil money penalty in lieu of a permanent disqualification for trafficking shall have the opportunity to submit to FNS information and evidence ... that establishes the firm's eligibility for a civil money penalty in lieu of a permanent disqualification in accordance with the criteria included in § 278.6(i). This information and evidence shall be submitted within 10 days, as specified in § 278.6(b)(1).

7 CFR § 278.6(b)(2)(iii) states:

If a firm fails to request consideration for a civil money penalty in lieu of a permanent disqualification for trafficking and submit documentation and evidence of its eligibility within the 10 days specified in § 278.6(b)(1), the firm shall not be eligible for such a penalty.

7 CFR § 278.6(i) states, *inter alia*:

FNS may impose a civil money penalty in lieu of a permanent disqualification for trafficking ... if the firm timely submits to FNS substantial evidence which demonstrates that the firm had established and implemented an effective compliance policy and program to prevent violations of the Program... In determining the minimum standards of eligibility of a firm for a civil money penalty in lieu of permanent disqualification for trafficking, the firm shall, at a minimum, establish by substantial evidence its fulfillment of each of the following criteria:

Criterion 1. The firm shall have developed an effective compliance policy as specified in § 278.6(i)(1); and

Criterion 2. The firm shall establish that both its compliance policy and program were in operation at the location where the violation(s) occurred prior to the occurrence of the violations cited in the charge letter sent to the firm; and

Criterion 3. The firm had developed and instituted an effective personnel training program as specified in § 278.6(i)(2); and

Criterion 4. Firm ownership was not aware of, did not approve, did not benefit from, or was not in any way involved in the conduct or approval of trafficking violations…

## APPELLANT'S CONTENTIONS

The Appellant made the following summarized contentions in its request for administrative review, in relevant part:

- Appellant did not traffic as the Retailer Operations Division alleges.
- Appellant provided evidence that it had been unable to submit in its initial response to the charge letter. This evidence included 11 cash register receipts of SNAP sales from the first month listed on the charge letter. The receipts show the sale of large amounts of cola and food. While the only provided evidence is from the month of February, it has receipts for all SNAP sales.
- Appellant also submitted sales tax documentation for all of 2013, specifically copies of Kentucky Sales and Use Tax Returns from January 2013 to December 2013. This evidence show that the store could handle the sales listed in the charge letter attachments.
- Appellant hopes that this documentation helps to show that it did not do what has been suggested. If more documentation is needed, Appellant will provide it.

The preceding may represent only a brief summary of the Appellant's contentions presented in this matter. However, in reaching a decision, full attention was given to all contentions presented, including any not specifically summarized or explicitly referenced herein.

It should be noted that the receipt and tax documentation provided by the Appellant in its request for administrative review had not been provided to the Retailer Operations Division by the Appellant at any time. As such, this review sent a copy of this evidence to the Retailer Operations Division on March 14, 2017 and gave the agency 30 days to determine whether or not the Appellant's evidence altered its conclusion of trafficking in any way.

On April 13, 2017, the Retailer Operations Division completed its analysis of the Appellant's documentation and informed this review that it maintained its position that it was more likely true than not true that the Appellant firm had trafficked in SNAP benefits during the period in question. The Retailer Operations Division stated that while the bulk sales of soda were clearly an issue in Kentucky, the minimal evidence provided by the firm to refute the charges was insufficient to change the determination of trafficking.

## ANALYSIS AND FINDINGS

The primary issue for consideration in a case based on SNAP redemption data is whether or not the Retailer Operations Division adequately established that the Appellant firm engaged in the violation of trafficking. In other words, did the Retailer Operations Division, through a preponderance of the evidence, establish that it is more likely true than not true that the irregular and questionable transactions cited in the charge letter were the result of trafficking?

Although the evidence provided by the Appellant was meager in comparison to the number of transactions listed in the charge letter, this review finds the evidence to be both credible and compelling, especially in light of the substantial length of time that had elapsed between the review period and the delivery of the charge letter. That the Appellant even had documentation from three and a half years earlier is noteworthy. Additionally, the cash register receipt documentation from February 2013 clearly shows the sale of large amounts of cola products, which are eligible for purchase with SNAP benefits. This evidence gives credence to the argument that trafficking is not the most likely reason for the unusual transactions listed in the charge letter.

It is impossible for this review to definitively conclude that trafficking did not occur at the Appellant firm at any point during the review period; nor would it be possible to do so in a case based on inconsistent redemption data. However, the determination of permanent disqualification must be supported to such a degree as to conclude that trafficking is the only plausible explanation.

In light of the evidence and information provided by the Appellant in comparison to that which was provided by the Retailer Operations Division, it is the determination of this review that there are other legitimate theories, besides trafficking, for the unusual transaction patterns listed in the charge letter. Therefore, it is the conclusion of this review that it is more likely true than not true that trafficking was not committed by the Appellant firm.

## CONCLUSION

The Retailer Operations Division's analysis of the Appellant's EBT transaction record was the primary basis for its determination to permanently disqualify Howard's Quik Mart from SNAP participation. This data provided evidence that the questionable transactions during the review period had characteristics that were consistent with trafficking in SNAP benefits.

However, upon review of all documentation provided in this case, it is the determination of this review that a preponderance of the evidence does not support a conclusion of trafficking. As such, the determination to impose a permanent disqualification against Howard's Quik Mart is hereby reversed.

JON YORGASON        April 19, 2017
Administrative Review Officer